Glenn v. Lehnen.

JOSEPH GLENN AND WILLIAM GLENN, Respondents, *vs.* DANIEL LEHNEN, Appellant.

1. *Evidence—Admissions—Hearsay, etc.*—In a suit brought on the parol promise of defendant to pay for stock sold to "A.," although one of the plaintiffs testified, that he knew nothing about the contract with the defendant, yet in cross-examination it would be proper to show by him, that on a former occasion he had testified that it was his understanding, that "A." had purchased the stock and that defendant had become his surety. Such testimony was competent as an admission on the part of plaintiff.

2. *Instructions should be predicated on the evidence.*—Instructions should always be predicated on the evidence in the case to which they relate.

3. *Statute of frauds—Original and collateral liability.*—The question whether a verbal contract comes within the Statute of Frauds or not, depends wholly upon the agreement. If a party agrees to be originally bound, the contract need not be in writing; but if his agreement is collateral to that of the principal contractor, or is that of a guarantor or a surety for another, the agreement must be in writing. It is immaterial in such case whether the promise is made prior to the passing or delivery of the consideration or afterwards; in either case the contract must be in writing; and in the latter must have a new consideration to uphold it.

*Appeal from Montgomery Circuit Court.*

*L. Carkener*, for Appellant.

I. To enable plaintiff to recover, the exclusive credit must have been given to defendant. (Matson vs. Wharam, 2 T. R. 80; Chit. Cont. 507, 510; Rob. Frauds, 208; Brown, Stat. of Frauds, §§ 197, 198; Cahill vs. Bigelow, 18 Pick, 369; Cutler vs. Hinton, 6 Rand., 509; Elder vs. Warfield, 7 Har. & J., 391; 1 McCord, 100; Rogers vs. Kneeland, 13 Wend., 121; Leonard vs. Verdenburg, 8 Johns., 37.)

II. The idea that because a promise is made before the sale or delivery, it is therefore an "original" one, is exploded. (Story Cont., § 861; Matson vs. Wharam, *supra;* Chit. Cont., *supra;* Mathews vs. Milton, 4 Yerger, 576; Leland vs. Creyon, 1 McCord, 100.)

*M. Kinealy, with J. M. Barker*, for Respondents.

I. Plaintiffs delivered the property to Clarkson solely on the faith and credit of defendant's parol promise " to be responsible for the price or to see it paid." They are entitled to recover. This was the fact, and is the law of the case.

(Proprietors, &c. vs. Abbott, 14 N. H:, 157; Arbuckle vs. Hawks, 20 Vt., 538; Perley vs. Spring, 12 Mass., 297.)

II. The promise of defendant was not within the statute, for the reason that there was no debt· at the time to which the promise could be collateral. (Mallory vs. Gillett, 21 N. Y., 412.)

VORIES, Judge, delivered the opinion of the court.

This action was brought by the respondents against the appellant before a justice of the peace.

The action was brought on an account for the price of a steer, which was stated to be $53.55, but which had been reduced by payments credited thereon, so that the balance claimed was $26.85.

The plaintiffs recovered a judgment before the justice for the amount claimed. From this judgment the defendant appealed to the Montgomery Circuit Court, where judgment was again rendered against him.

On the trial in the Circuit Court, the plaintiff, Joseph Glenn, was examined as a witness on the part of the plaintiffs, and testified, that some time previous to the first of May, 1871, one Jesse B. Clarkson came to him, and wished to buy the steer mentioned in the account sued on; that he offered to sell Clarkson the steer for 5 and 1-4 cents per pound; that Clarkson desired to purchase the steer on time, and pay for him after he had been butchered and sold. This was refused, and Clarkson was told that he must either pay cash or give security. A short time after this, Clarkson returned and said he had made arrangements to secure the money, and wanted the steer; but he did not take the steer at that time, but returned the third time and told plaintiff, that Mr. Lehnen (the defendant) had agreed to become his surety for the payment of the money, after which the steer was driven up and put in plaintiff's lot.

This evidence on the part of plaintiffs of the conversation with, and statements of, Clarkson, was objected to at the time by defendant, on the ground, that Clarkson was no party to

the suit, and his statements and contracts were not admissible in evidence against defendant, and that said evidence was irrelevant and incompetent.

The court overruled the defendant's objection, and admitted the evidence, and the defendant excepted.

The witness then proceeded to state, that Clarkson told him that Lehnen wished to see him at his house about the steer; that witness then went to Lehnen's house; that the first thing said to witness by Lehnen was: "I want to see about buying that steer." Witness asked him "what about it?" He said he wanted Clarkson to get the steer, as Clarkson was going to butcher some Texas cattle that he (Lehnen) had, that were not then fit to kill, and that he wanted Clarkson to get something to commence on to prevent another butcher from getting the control of the market. Witness then told him "if he would see the money paid, Clarkson could have it; but that he could not have it on his own responsibility. He said "all right, let him have it, and I will see it paid for."

The witness further testified, that, after this conversation with defendant, the steer was delivered to Clarkson, or taken from the lot and taken to the stock-yard to be weighed, and that defendant came to the stock-yard and assisted in weighing the steer and taking him off; that something was said by defendant at his house about his never signing a note for any one, when witness told him he did not want him to sign a note, that his word was sufficient.

On cross-examination, witness was asked by the defendant "whether in the conversation with Lehnen at the house of the latter anything was said about when, where, or to whom, the steer was to be delivered?" The witness refused to answer the question further than to say, that he had told all he had to tell about it, and had told all he knew about it.

The defendant's counsel asked the court to require the witness to answer the question; but the court refused so to do, to which ruling the defendant excepted.

The witness stated, that he had collected part of the price of the steer from Clarkson; but that he did so at defendant's request.

William Glenn, the other plaintiff in the case, was also ex-
amined as a witness. On his cross-examination he stated
that he knew nothing about the contract with Lehnen, ex-
cept what his brother, Joseph Glenn, had told him; that he
was present, and testified on the trial before the justice of the
peace. Witness was then asked, whether he did not, in his
testimony on such trial, state; that "it was his understanding,
that Jesse B. Clarkson bought the steer, and that the defend-
ant became his security for the price of the same."

The plaintiffs' counsel objected to the question on the
ground, that as the witness did not know of his own knowl-
edge what the contract was, the evidence was hearsay and
incompetent. The objection was sustained by the court, and:
the question excluded, to which the defendant at the time ex
cepted.

The defendant was examined as a witness in his own
behalf, and contradicted in direct terms the evidence of
plaintiff in reference to the contract or agreement by him to
pay for the steer; denied that he ever agreed to become
liable for the steer, either as Clarkson's surety or otherwise;
but said, that he had positively refused to become so liable;
admitted, that he had told Joseph Glenn, that he was pur-
chasing hides of Clarkson and sometimes traded with him,
and that, if he could assist plaintiffs in any way in collecting
the price of the steer from Clarkson, he would do so.

The defendant introduced other evidence tending to prove,
that the steer had been sold to Clarkson, and that plaintiffs
had purchased beef of Clarkson at different times at his
butcher shop, and had credited the account for the price of
the beef on their account for the steer.

After the close of the evidence the court instructed the
jury as follows First—"If the jury believe from the evi-
dence, that, the steer was delivered on defendant's promise
alone to pay therefor, then the promise was not collateral,
but original, and not within the statute of frauds, and they
will find for the plaintiffs:" Second—"If the jury find from
the evidence in the cause, that the sale of the steer in ques-

tion was made by plaintiffs to Clarkson, and the animal delivered in accordance with such sale, no subsequent agreement or understanding by defendant, not in writing, to be responsible for the price of said steer, is binding on defendant." Third—"If the jury find from the evidence in the cause, that plaintiff sold the steer to Clarkson, and let him have the steer on his own credit and responsibility, a verbal promise by defendant to be responsible for said steer, if such were made, is not binding in law on defendant, and the verdict should be for the defendant:" Fourth—"If the jury believe from the evidence in the cause, that Clarkson offered to buy the steer in question, of plaintiffs, at a certain price, and that plaintiffs declined to sell the same unless paid for or secured, and that before the offer aforesaid was accepted, defendant promised plaintiffs to be responsible for the price of said steer, and that the steer was afterwards delivered to Clarkson in defendant's presence on the faith of said promise of defendant, and without such promise plaintiffs would not have let said Clarkson have said steer, then the jury should find for the plaintiffs:" Fifth—"If on the other hand, the jury believe from the evidence in the cause, that the plaintiffs let said Clarkson, upon his offer to buy, have said steer without any previous promise by the defendant to plaintiffs, or either of them, to pay, or to be responsible for, the price of said steer, or to see it paid, and without any other promise or assurance to plaintiffs, or either of them, than that he would help plaintiffs to get the price of said steer from said Clarkson in case they let him have the steer, then the verdict should be for the defendant."

The defendant at the time objected to each of these instructions; but the court overruled said objections, and gave the instructions, and the defendant excepted.

The defendant then asked the court to instruct the jury as follows: First—"Unless the jury believe from the evidence, that the plaintiffs sold the steer, mentioned in the account sued upon, to the defendant, the plaintiffs cannot recover:" Second—"If the jury find from the evidence, that the plaintiffs

sold the steer to Jesse B. Clarkson, and that defendant promised to be security for the price thereof, then the plaintiffs cannot recover in this action, unless the jury further find, such promise was in writing."

The court refused to give each of these last instructions, and the defendant again excepted. The jury then found a verdict for the plaintiffs for the amount claimed by the account sued on.

The defendant in due time filed a motion for a new trial, setting forth, as reasons therefor, the opinions and action of the court excepted to.

The court overruled said motion, and rendered final judgment on the verdict, and the defendant again excepted, and appealed to this court.

The first question presented for the consideration of this court is, as to the propriety of the action of the Circuit Court in admitting the witness, Joseph Glenn, to detail in evidence the conversations of plaintiffs with Jesse B. Clarkson, and his statements made to plaintiffs in reference to the defendant's agreement to go his security for the price of the steer. It is contended by the appellant, that this evidence was incompetent; that Clarkson was no party to the suit, and stood in no relation to the defendant that would justify the court in receiving his statements in evidence against the defendant.

The position of the defendant is right, if the evidence was admitted for the purpose of binding the defendant or of fixing his responsibility to the plaintiffs for the price of the steer sold; but it seems, that this evidence was only detailed by the witness for the purpose of showing, that the plaintiffs had refused to sell the steer to Clarkson on his own responsibility, and as preliminary to the conversation had with defendant, and while the statements of Clarkson were not strictly legal evidence, it cannot be seen how what was detailed could injure the defendant. This court would not, therefore, reverse the judgment for that reason, if there were no other errors in the record.

It is also insisted by the appellant, that the Circuit Court

erred in sustaining the objection of the plaintiffs to a question by the defendant to William Glenn, who was examined as a witness in the cause. This witness was one of the plaintiffs; had testified, that he knew nothing about the contract with defendant, except what his brother and co-plaintiff had told him. He also stated, that he had been examined as a witness upon the trial of the case before the justice of the peace. The defendant then, in the cross-examination of said witness, asked him if he had not testified before the justice, that it was his understanding that Jesse B. Clarkson bought the steer, and that the defendant became his security for the price. This question was objected to by the plaintiffs on the ground, that the evidence was hearsay and incompetent.

The objection was sustained, and the question excluded, and no answer permitted thereto.

This was clearly wrong. It was certainly material to know what understanding of the contract he had got from his brother and co-plaintiff, at or near the time the transaction took place, and in a case like this, where the evidence is conflicting, the question might become important in order to test the memory of the witness, or to contradict him if answered in the negative. It certainly cannot be said, that the admissions or statements of a party to an action in reference to the matters in controversy is hearsay evidence.

This might dispose of the case; but as it will be remanded for another trial, it is proper that we should briefly notice the exceptions of the defendant to the opinions of the Circuit Court in giving and refusing instructions to the jury.

By the first instruction given by the court, the jury are told, that if the steer was delivered to Clarkson on defendant's promise alone to pay therefor, that then the promise was not collateral and need not be in writing. To this instruction there can be no valid objection.

By the second instruction, the court tells the jury, that if the steer was sold by plaintiffs to Clarkson and delivered to him in conformity to such sale, no subsequent agreement or understanding by defendant, not in writing, to be responsible

for the price of the steer, is binding on the defendant. This instruction is abstractly true; but it is insisted, that it was calculated to mislead the jury, and was not authorized by any evidence in the case.

Instructions should always be predicated on the evidence in the case to which they relate.

In the case under consideration, there is no pretense in the evidence or otherwise, that any promise or agreement was ever made by the defendant to pay for the steer, either primarily or collaterally, subsequent to the time it was delivered to Clarkson, and therefore it was wholly unnecessary to instruct the jury as to the effect of such a promise. Whatever promise was made by the defendant to pay for the steer, if he made any, was admittedly made before the delivery of the steer, so that the instruction could only have the effect to mislead the jury into the belief, that if the promise of the defendant had been made before the delivery of the steer to Clarkson, he would be liable to pay for the steer, whether his contract was to be considered as an original undertaking or only collateral to the obligation of Clarkson, or in other words, that if the contract or promise had been made before the delivery of the steer, it was therefore necessarily an original contract.

There was evidence in the case tending to prove, that plaintiffs had treated Clarkson as their debtor for the price of the steer, and had been attempting to collect the debt from him, and trying to induce him to give security for its payment; but these facts, which were relied on by the defendant to show that his agreement or promise, if any, was collateral to the promise of Clarkson, who, he contended, was the original debtor, were wholly ignored by the instructions of the court; the court seeming to hold, that if the promise of defendant preceded the delivery of the steer to Clarkson, it could not be collateral, and was not affected by the statute of frauds and perjuries.

It seems to be well settled, that whether a contract comes within the provisions of the statute or not, depends wholly on

the agreement. If a party agrees to be originally bound, the contract need not be in writing; but if his agreement is collateral to that of a principal contractor, or is that of a guarantor or security for another, the agreement must be in writing.

It makes no difference in such case, whether the promise is made prior to the passing or delivery of the consideration or afterwards. If it is made before and is a part of the original contract that the guaranty shall be given, then the original consideration for the contract will be sufficient to uphold the guaranty; but if the guaranty is made after the original contract has been fully executed, then the guaranty must have a new consideration to uphold it; but in either case the contract must be in writing. (Story Cont., § 861; Cahill vs. Bigelow, 18. Pick., 369; Rogers vs. Kneeland, 13 Wend., 114; Leonard vs. Vreedenburg, 8 John., 29; The Proprietors, &c. vs. Abbott, 14 N. H., 157.)

The defendant asked the court by second instruction to tell the jury, that if the plaintiffs sold the steer to Jesse B. Clarkson, and if the defendant promised to be security for the price thereof, then the plaintiffs could not recover, unless the promise was in writing.

If this instruction had been given in connection with the second instruction given by the court, the jury could not have been misled by said instruction; but it was refused by the court, and the jury left to infer, that if the promise was made by the defendant before the delivery of the steer, that it was necessarily binding.

By the fourth instruction given by the court, the jury were told, that if plaintiffs declined to sell the steer to Clarkson unless the price was paid or secured, and that before the plaintiffs accepted Clarkson's offer to purchase, the defendant promised plaintiffs to be responsible for the price of the steer, and that the steer was afterwards delivered to Clarkson in defendant's presence on the faith of said promise of defendant, and that without such promise plaintiffs would not have let Clarkson have the steer, then the jury should find for the plaintiffs.

This instruction at first view would seem to be correct; but upon examination it will be found to be objectionable; it is also calculated to mislead, ignoring one main ground of the defendant's defense.

It may be true, that defendant promised to be responsible to plaintiffs for the price of the steer, and that the promise was made before the delivery of the steer to Clarkson, and that plaintiffs would not have delivered the steer without defendant's promise, and yet, the defendant may only have promised as surety for Clarkson, in which case the plaintiffs could not recover against the defendant, unless his promise was in writing.

There was evidence tending to prove this supposed state of facts, and it ought not to have been wholly overlooked in an instruction which seems to be intended to govern the entire case.

The jury are told in the last instruction given by the court, that if the defendant made no other promise than that he would assist to collect the money from Clarkson, that the verdict should be for the defendant. This does not help the instruction.

The jury ought to have been told, that if defendant's promise was only a promise as surety or guaranty for the debt of Clarkson, that it was within the statute and the plaintiffs could not recover. The evidence strongly tended to prove, that plaintiffs looked upon Clarkson as their debtor for the steer, and upon the defendant as security. And this view ought to have been presented to the jury by a proper instruction, or the defendant's second instruction given.

There were other exceptions taken to the action of the court by the defendant, both as to the admission of evidence, and as to the instructions, but it is not deemed necessary to give them any further notice in this opinion.

Judge Sherwood absent. The other Judges concurring, the judgment is reversed and the cause remanded.