KANSAS CITY SEWER PIPE COMPANY, Respondent, v. WILLIAM W. SMITH, Appellant.

Kansas City Court of Appeals, May 20, 1889.

1. **Statute of Frauds:** ORIGINAL OR COLLATERAL UNDERTAKING DEMURRER TO EVIDENCE, RULE AS TO. The rule is, that on a demurrer to the evidence, the court must indulge every inference of fact in favor of the party offering the evidence which a jury might indulge with any degree of propriety, but it can not indulge any inference in favor of the demurrant; and the law seems to be that in determining whether a defendant has rendered himself liable upon a parol promise to plaintiff for goods purchased which are delivered to and intended for the use of a third person, and whether such transaction is a sale to the defendant, or a parol guaranty upon his part of the payment by such third person, the language of the promiser is to be construed in the light of the situation and acts of the parties and the circumstances of the case and is a question of fact, and that the question, who was trusted, is always one for the jury, so where, as in this case, plaintiff's testimony tended to show that it refused to continue furnishing a sewer contractor sewer pipe, until defendant who was advancing the contractor money, and taking the sewer tax bills, said "That's all right, I will pay all bills for material for the sewer, once a month;" and thereafter defendant promptly paid several monthly installments and never declined to pay for the others until after delivery, but on the contrary gave as a reason for not doing so that he was hard up but would pay; the action of the trial court in overruling a demurrer to the evidence was proper.

Kansas City Sewer-Pipe Co. v. Smith.

2. ———: ———: PLEADING: SUFFICIENCY OF THE PETITION. The petition, in this case, alleges that the plaintiff at the special instance and request of the defendant, and on the promise that he would pay for the same, sold and delivered to the contractor the sewer pipe, and was sufficient, the cause of action thus being upon an original and not collateral promise and therefore not within the statute of frauds.

3. ———: NEW PROMISER MAY BE HELD THOUGH THE OLD BE NOT DISCHARGED. The court is of the opinion that the true ground of principle, upon which plaintiff's recovery in this case, should be sustained is that the defendant's promise to plaintiff to pay for the sewer pipe arose out of a consideration of benefit moving to him by reason of his agreement with the contractor to furnish the money and take the tax bills which could not be made available until the contract was executed, and, in such case, the new promiser will be bound though the debt still exists in full force against the original debtor and in favor of the original creditor.

*Appeal from the Jackson Circuit Court.*—HON. TURNER A. GILL, Judge.

AFFIRMED.

*Scarritt & Scarritt,* for the appellant.

(1) By the written contract between John Thomson and the sewer pipe company, the company became obligated to deliver to Thomson the sewer pipe therein mentioned, and Thomson became obligated to pay the sewer pipe company therefor, according to the terms of said contract. There is no pretense that the terms of said contract were ever changed, or that Thomson was ever released from his obligation to pay for the pipe, or that there was ever any agreement between Thomson, Smith and the sewer pipe company, whereby Smith was to be substituted as the company's debtor instead of Thomson. If, therefore, Smith ever agreed to pay for the pipe sold and delivered to Thomson, after the execution of the said contract, such agreement must be proved in writing. The written contract between Thomson and the sewer pipe company is conclusive as to the fact that

VOL. 36—39

credit was given to Thomson, and that he was the company's debtor ; and any agreement by Smith to pay the obligation arising out of that contract falls within the statute of frauds, and must be in writing.  Defendant's demurrer to plaintiff's testimony should, therefore, have been sustained.   R. S. 1879, sec. 2513 ; *Walker v. Richards*, 39 N. H. 259 ; *Pfaff v. Cummings*, 34 N. W. Rep. [Mich.] 284 ; *Miller v. Lynch*, 19 Pac. Rep. [Or.] 844 ; *Bloom v. McGrath*, 53 Miss.  257 ; *Norris v. Graham*, 33 Md. 56 ; *Langdon v. Richardson*, 58 Iowa, 610 ; *Pettit v. Braden*, 55 Ind. 201 ; *Mallory v. Gillett*, 21 N. Y.  413 ; *Ruppe v. Edwards*, 52 Mich.  411 ; *Richardson v. Robbins*, 124 Mass.  105 ; *Glenn v. Lehnen*, 54 Mo.  52 ; *Clay v. Walton*, 9 Cal.  328 ; *Read v. Ladd*, 1 Edmonds' Rep. [N. Y.] sel. cas. 100 ; *Curtis v. Browne*, 5 Cush. [Mass.]  488 ; Wood on St. of Frauds, p. 163, notes 1 ; Brandt on Suretyships and Guaranty, sec. 62, notes 1 and 2 ; *Whitman v. Bryant*, 49 Vt. 512 ; *Jack v. Morrison*, 48 Pa. St. 113 ; *Doyle v. White*, 26 Me. 241 ; *Matthew v. Milton*, 4 Yerger [Tenn.] 576.   (2) Defendant's objection to the introduction of any testimony under the petition should have been sustained, as the petition alleges that the sewer pipe mentioned therein was sold and delivered to Thomson and not to Smith, and that payment therefor had been demanded of both Thomson and Smith, and that both had refused payment. *Langdon v. Richardson*, 58 Iowa, 610 ; *Welch v. Marvin*, 36 Mich. 59 ; *Gill v. Herrick*, 111 Mass. 503 ; *Hite v. Wells*, 17 Ill. 90. (3) Some stress is laid on the fact that the promise of Smith, if any, to the sewer pipe company, was made before all the sewer pipe was delivered to Thomson, under the contract.   A sufficient answer to this is found in the books to the effect that all promises to answer for the debt or default of a third person must be in writing, whether the promise be made before, at the time, or after, the debt or liability is created. *Wagner v. Halleck*, 3 Col. 183 ; *Mallory v. Gillett*, 21 N. Y. 415 ;

Kansas City Sewer-Pipe Co. v. Smith.

*Clay v. Walton*, 9 Cal. 328 ; *Langdon v. Richardson*, 58 Iowa, 610. (4) It is not disputed that the plaintiff sold and delivered the sewer pipe sued for to John Thomson, and charged the said Thomson therefor on its books, and also made out the bills for said sewer pipe in said Thomson's name ; this raises the presumption that credit was given to said Thomson by the sewer-pipe company, and therefore plaintiff's instructions, numbers 8 and 9, should have been given by the court. *Matthews v. Milton*, 4 Yerger, 576 [27 Amer. Dec.] 247 ; *Rain v. Story*, 3 Car. & Payne, 130 ; *Tileston v. Nettleton*, 6 Pick. 509 ; *Wagner v. Halleck*, 3 Col. 184 ; *Langdon v. Richardson*, 58 Iowa, 610 ; Brandt on Suretyship and Guaranty, sec. 64, note 1 and 2 ; 1 Greenl. Ev., sec. 196. (5) There was no consideration or a pretense of a consideration, moving from the sewer-pipe company to Smith, which would support the alleged promise of Smith to pay for the sewer pipe. It was error, therefore, for the court to give plaintiff's instructions or to permit the case to go to the jury, *Glenn v. Lehnen*, 54 Mo. 53 ; *Frame v. August*, 88 Ill. 424 ; *Mallory v. Gillett*, 21 N. Y. 415 ; *Richardson v. Robbins*, 124 Mass. 106 ; *Vaughn v. Smith*, 22 N. W. Rep. 684 ; *Eddy v. Roberts*, 17 Ill. 505 ; *Simpson v. Patten*, 4 Johns, 422 ; *Willard v. Bosshard*, 32 N. W. Rep. [Wis.] 538. (6) If Thomson could have been sued on his contract with the sewer-pipe company, and there is no doubt that he could, then Smith is not liable in this case, as his promise, if any, was not in writing. *Leland v. Crayon*, 1 McCord [S. C.] 100. See cases cited under point 1.

*Karnes, Holmes & Krauthoff*, for the respondent.

(1) The statute invoked by defendant ( sec. 2513 ) provides that "no action shall be brought to charge any person upon any special promise to answer for the debt, default, or miscarriage of another person" unless such

promise shall be in writing, etc. The ruling longest and best established proceeds upon a distinction between original and collateral promises to pay. In the leading case of *Birkmyr v. Darnell*, it was said by Lord Holt that if two come to a shop, and one buys, and the other, to give him credit, promises the seller, "If he does not pay you, I will," this is a collateral understanding. But if he says, "Let him have the goods, and I will be your paymaster" (or other words importing a promise that he will pay for the goods sold, in the first instance), this is an undertaking as for himself (Salkeld, 27), and not within the statute. Thus, "an agreement by A to pay B for work to be done for C is not a contract to answer for default of another, and need not be in writing." Such a contract is an original undertaking and carries its own consideration by being acted on. *Sinclair v. Bradley*, 52 Mo. 180; *Glenn v. Lehnen*, 54 Mo. 45, 51, 53; *Barker v. Scudder*, 56 Mo. 272, 275, and cases cited; *Coquard v. Depot Co.*, 10 Mo. App. 261; 1 Reed Stat. Frauds, secs. 30, 84; 1 Addison Contracts, secs. 167, 168. That the goods are to be and were delivered to another and the promise given for his benefit, and the consideration received by him, will not bring it within the statute, if the credit was in fact given to the promiser. 1 Smith Lead. Cases [8. Am. Ed.] 532; 1 Reed Stat. Frauds, secs. 87, 88; *Stone v. Walker*, 13 Gray, 615. The fact that the goods were charged to the person for whose use they were bought, or that a bill was rendered to him as a purchaser, does not preclude a recovery. 1 Smith Lead. Cases, 533; 1 Reed Stat. Frauds, sec. 91; notes "V" & "X," sec. 93; Brandt on Guaranty, sec. 62, note 3. *Hetfield v. Dow*, 3 Dutch. 446. Nor that the promise of the defendant was given after the goods had been ordered and arranged for by Thomson. 1 Smith Lead. Cases, 533; 1 Reed Stat. Frauds, secs. 84, 85. Though in this case the matter was all part of one and the same transaction; and the order for the goods was subject to

the condition that payments should be arranged for before being delivered. 1 Reed Stat. Frauds, sec. 140; *Leonard v. Vredenburgh*, 8 Johns. 29, 37 The decisive question is, who was trusted? This is one of fact from all the circumstances in evidence, and for the jury to decide. 1 Smith Lead. Cases, 532; 1 Reed Stat. Frauds, sec. 89; 1 Reed Stat. Frauds, secs. 85, 86, 87, 88, 91; Brandt on Guaranty, secs. 63, 64. The defendant is liable on the theory that his statement to Dickey proved a promise made to Thomson to pay plaintiff for material. Such a promise is not within the statute, which applies only where the promise is made to the creditor. "A verbal promise to a debtor himself to pay or to furnish him the means of paying his debt, is not within the statute." Brandt on Guaranty, sec. 58; Brandt on Guaranty, sec. 49; *Wright v. McCully*, 67 Mo. 134.

SMITH, P. J.—This was an action brought by the plaintiff corporation, against the defendant, in the circuit court of Jackson county, to recover a balance on an account. It was alleged in the petition, that "at the special instance and request of the defendant and on the credit of said defendant, and his promise and assurance that he would pay plaintiff for the same, the plaintiff sold and delivered to said Thomson, at various times, between the seventh day of December, 1886, and the twenty-ninth day of June, 1887, sewer pipe of various sizes and kinds, of the aggregate value of $3261.24, and that said Thomson had paid on account thereof, the sum of $1714.22, leaving a balance now due to plaintiff, and unpaid, of $1547.02, which said Thomson and the defendant refused to pay," etc.

The answer was a general denial, and for a separate defense pleaded, that "the contract or promise alleged in plaintiff's petition was not in writing."

At the trial the defendant objected to the introduction of any evidence on the grounds that the petition

did not state a cause of action, which was overruled. The plaintiff then introduced evidence tending to show, that it is a business corporation engaged in the manufacture of sewer pipe, and that the defendant was a tax-bill buyer and money lender; that in October, 1886, John Thomson, who was a man of very small means, had awarded him, by the City of Kansas, a contract for the construction of district sewer number 26, which was to be paid for with special tax bills against the real property in the said sewer district; that shortly after the date of the award of said contract, the said Thomson applied to plaintiff to get quotations for sewer pipe delivered, saying that he was arranging with defendant to furnish the funds to carry on the contract.

It seems that the prices quoted to Thomson were satisfactory, and under an informal agreement, sewer pipe was delivered to him in the month of November, of the value of something like one hundred dollars; that on November 27, 1886, the plaintiff addressed a written proposition to Thomson, which was formally accepted by him, to furnish sewer pipe for the prices and at the places therein named, payment to be made on the first day of each month for all material delivered during the preceding month.

On the third day of December, 1886, Thomson and defendant entered into a contract in writing, whereby defendant obligated himself to furnish Thomson money to finish the said sewer contract.

Thomson agreed to furnish and expend fifteen hundred dollars in the execution of the contract, before defendant should be required to perform his part of it, after which defendant was to furnish during the progress of the work fifteen thousand dollars, to be applied thereto in installments at the end of each week sufficient to pay the actual amount of expenses, always allowing as much of the expenses to remain unpaid as could be done, defendant having the right to see that the money furnished by him was

Kansas City Sewer–Pipe Co. v. Smith.

applied to the best advantages, etc. ; that at any time, if the work was not conducted in an economical manner, or was not being done according to contract and to the satisfaction of the city engineer, or that the work would not go on without more money being advanced than was agreed upon, that defendant might stop any further advances of money, and take possession of the work, implements and materials used about the same, and complete the contract himself ; that Thomson had given defendant an assignment of the tax bills to be issued in payment of the work, with power to receive and receipt for the same ; that when said tax bills were issued to defendant, he should, during the first thirty days thereafter, take out of them, at their face value less ten per cent., sufficient to pay all money he may have advanced with accrued interest on account of said work, and the balance deliver to Thomson ; that Thomson should give his promissory note for each installment of money furnished, bearing ten per cent. interest after February 1, 1887. Thomson having advised the plaintiff's business agent Dickey that he had made the said agreement with the defendant, asked Dickey to go with him to defendant to verify this statement; that accordingly they went to see defendant, when Dickey, on being introduced to defendant by Thomson, said to him, "I understand Mr. Thomson has made arrangements with you about the payment of some pipe, on sewer district number 36," and to which defendant responded: "Yes, Mr. Dickey, that is all right, Mr. Thomson has made arrangements with me that I will pay the bills for the materials delivered on sewer district 36 once a month," and that plaintiff would not have furnished the sewer pipe, but for defendants promise to pay therefor.

The evidence of the plaintiff further tended to show that the sewer pipe furnished by the plaintiff for the month of November was paid for by defendant;

that further deliveries were made by plaintiff for the months of December, January, February, March, April and May following ; that the accounts rendered by the plaintiff for the December and January deliveries, were paid for by defendant ; that the account sued on was for material delivered from February 1 up to the last delivery, and that was after allowing credit for two several payments amounting to seventeen hundred and fifty dollars ; that the balance claimed therein was correct, and that all the bills had been paid to the date of the account sued upon, which was February 1 ; that defendant had promised when the unpaid monthly statements were furnished him "that he would pay them, but was then close pushed and a little hard up."

There was further evidence introduced by plaintiff, tending to show that the account for the sewer pipe, furnished for sewer 36, was charged on the plaintiff's books to Thomson, but that it was kept separate from his other account for sewer pipe ; that without any request of defendant, the plaintiff had Thomson to "O. K." the monthly statements before the presentation to defendant, for the purpose of showing him the same were correct.

At the close of plaintiff's evidence the defendant interposed a demurrer thereto, which was by the court overruled.

The defendant was introduced as a witness in his own behalf, and testified that it was untrue that he ever had any conversation with Dickey in which he promised to be responsible for the sewer pipe furnished for said sewer ; that he paid bills "O. K.'d" by Thomson ; that he loaned him twenty thousand dollars and paid it out in that way, as he needed it in the construction of the sewer ; that he never ordered the sewer pipe sued for, and never received any of it ; that he paid certain bills for pipe furnished by plaintiff to Thomson on the orders of the latter.

Thomson, who was introduced as a witness by defendant, stated that he bought the pipe for sewer 36, of plaintiff in the latter part of November, 1886, as shown by the contract made with plaintiff ; that he had been speaking about it before the contract was entered into ; that he had received some pipe along in the month preceding the date of the contract; that the monthly bills for the pipe were presented to him and that he "O. K.'d" them and sent them to defendant for payment; that plaintiff had never released him from his contract, and that he was bound for the plaintiff's account if it could be got out of him ; that he did not tell Dickey when he made the contract that defendant would pay for the pipe; that when he got the contract he had no means to carry it out, and expected to pay for the same in the usual way. It is done by making an assignment of the tax bills to some capitalist, and in that way get advances—when tax bills are assigned the assignee collects them ; that five or six days after he assigned the contract with plaintiff he went with Dickey to defendant to get a written guarantee for the payment of the pipe, which defendant refused to give ; that he paid eight hundred and ninety dollars on executing contract before defendant put in any money ; that *he had a faint recollection* of a conversation between Dickey and defendant when one of the statements was presented.

There was some other immaterial evidence adduced which it is unnecessary to state.

The court at the instance of the plaintiff declared the law to be as follows :

"1. The court instructs the jury that if the plaintiff sold and delivered to John Thomson the goods described in the account sued on, or any part thereof, and that such sale and delivery were made and had on this defendant's promise alone to pay for such goods, and that the defendant agreed to be originally bound for such payment, then the jury will find for the plaintiff for such payment of the goods sued for as were sold

and delivered under said promise and agreement if any ; and it was not necessary that said promise and agreement, or either of them, if any were made, should have been in writing in order to be binding on the defendant.

"2.   If the jury finds for the plaintiff they will add interest at the rate of six per cent. from September 24, 1887, the date of institution of this suit up to this date, to the amount they may award the plaintiff, if any, as the reasonable value of goods or merchandise, sold and delivered as stated in the preceding instruction."

The court gave these instructions for defendant :

"Although the jury may believe from the evidence that at the special instance and request of the defendant and on the credit of said defendant, and his promise and assurance that he would pay plaintiff for the same, the plaintiff sold and delivered to one John Thomson, the sewer pipe mentioned in the petition, and account filed ; and the defendant promised originally and in the first instance, to pay the plaintiff for any sewer pipe it might sell to said Thomson, and that on the faith of said promise the sewer pipe referred to was sold and delivered, yet if you further believe from the evidence that said plaintiff looked to said Thomson for its pay in the first instance, or gave to said Thomson any credit, whatever, on account of such sales of sewer pipe, then your verdict must be for the defendant."

"6.   Before the jury can return a verdict for the plaintiff in this case, you must believe from the evidence that the defendant Smith actually promised and agreed with the plaintiff, before the sale and delivery of the sewer pipe sued for, or any part thereof, to pay for the same, and the burden of proving such a promise and agreement is upon the plaintiff, and must be proved to your satisfaction by a preponderance of the evidence in the case, and if such promise and agreement is not proved to your satisfaction by a preponderance of the evidence, then your verdict must be for the defendant."

A number of instructions were asked by the defendant and refused by the court.

In the view we have taken of the case, these need not be set forth here.

The verdict of the jury was for the plaintiff. After the usual motion for a new trial was filed and overruled judgment was entered, from which the defendant appeals here.

I. The defendant, for his first ground of appeal, contends that by the written contract between Thomson and plaintiff, it became obligated to deliver to him the sewer pipe, and that he became obligated to it to pay therefor; that there is no evidence that the terms of said contract were ever changed, or that he was ever released from his obligation to pay for the pipe, or that there was ever any agreement between plaintiff, defendant, and Thomson, whereby defendant was to be substituted as the plaintiff's debtor, instead of Thomson, and that if defendant ever agreed to pay for the said pipe sold and delivered to Thomson after the execution of said contract of November 27, 1886, such agreement, to be binding, must have been in writing; that the said contract between Thomson and plaintiff, is conclusive as to the fact that credit was given to Thomson and that he was plaintiff's debtor, and that any agreement with defendant to pay this obligation, arising out of said contract, falls within the statute of frauds, section 2513, Revised Statutes, and that, therefore, the demurrer to the plaintiff's evidence should have been sustained.

The rule is, that on a demurrer to the evidence, the court must indulge every inference of fact in favor of the party offering the evidence, which a jury might indulge with any degree of propriety, but it can not indulge any inference in favor of the demurrant. *Buesching v. Gas Light Co.*, 73 Mo. 219; *Harris v. Railroad*, 89 Mo. 233; *Frick v. Railroad*, 75 Mo. 595.

And the law seems be that, while a person may become liable upon a parol promise for goods pur-chased, which are to be delivered to, and intended for the use of another, in order to make him *so*, the debt must be his only.

To determine the question as to whether the transaction is a sale to the promiser, or a parol guaranty upon his part of the payment by another, the language of the promiser is to be construed in the light of the acts of the parties, and the surrounding circumstances, and *the question is one of fact.    Cowder v. Gottgetrue,* 50 N. Y. 650; *Scudder v. Wade,* 1 South. 249. And the question who was trusted is always for the jury. *Maurin v. Fogleberg,* 37 Minn. 28; Reed on Statute of Frauds, sec. 89 ; *Darnell v. Tratt,* 2 C. & P. 82 ; *Ruggles v. Cotton,* 50 Ill. 414; *Billingsly v. Dumproof,* 11 Ind. 416 ; *Locke v. Brown,* 14 Me. 111 ; *Dean v. Tallman,* 105 Mass. 444.

And when there is a conflict of evidence upon the subject the weight to be given to any particular circumstance should be left to the jury, who, in deciding the question to whom the credit was given, should take into consideration the expression used, the situation of the parties, and the circumstances of the case.    Reed on Statute of Frauds, sec. 89.

In *Perkins v. Hinsdale,* 97 Mass. 159, the court said : " The evidence was very strong that the contract of defendant was a collateral undertaking, and so within the statute of frauds, and would have fully warranted such finding by the jury.    But the plaintiff, in one part of his testimony, expressly stated that " the sole credit was given to the defendants and none to Hinsdale.    *    *    *    Considering, therefore, that the evidence was chiefly oral, not absolutely distinct in its terms, or consistent in its different parts, and that its effect depends upon inferences to be drawn from it, we think on the whole, that it should have been submitted

Kansas City Sewer-Pipe Co. v. Smith.

to go to the jury under proper instructions, to determine what the contract was, as a question of fact, and that the court should have so tried it."

So that whether the question was one of law for the court, or of fact for the jury, depends upon the evidence adduced. In this case the plaintiff's evidence tended most strongly to show that Thomson, who was a man nearly wholly without means, and was unable to carry out the contract which had been awarded to him, and which was known to the plaintiff, went to the plaintiff to get the prices of sewer pipe required by his contract, and in doing so assured the plaintiff that he was arranging or had arranged with the defendant, who was a capitalist, to furnish the funds to complete the contract; that the prices were agreed upon; that a small quantity of the pipe was thereupon delivered for the said sewer; that the plaintiff thereupon required Thomson to enter into the agreement of November 27, 1886, and before the plaintiff proceeded to deliver the material, which was required for the construction of said sewer, and to be certain that he was dealing through Thomson with defendant, and at the request of Thomson he went to defendant and inquired of him whether it was true that he had made any arrangements with Thomson about the payment of the pipe for sewer district 36, and that defendant replied, "That is all right. I will pay all the bills for material delivered for sewer district 36, once a month," and that but for this promise of defendant, the plaintiff would not have delivered the sewer pipe to Thomson; that plaintiff, upon the faith of defendant's promise, delivered the sewer pipe; that defendant promptly paid for several of the monthly installments, and did not decline to pay for the others until after the same were delivered, but on the contrary gave as a reason for not doing so, that he was hard up, but would pay them,—promising at one time to pay five hundred dollars of the amount in three days thereafter.

Applying the rules to which we have just made reference to the evidence of the plaintiff, it seems to us, quite obvious that the circuit court did not err in overruling the demurrer to plaintiff's evidence.

The vice in the defendant's statement of the plaintiff's evidence, which he contends was legally insufficient to make a *prima facie* case for the plaintiff, is that it ignores other evidence of the plaintiff which was not distinct in its terms, or consistent in its different parts with defendant's statement, and for this reason defendant's demurrer should have been overruled.

II.   The defendant's further contention is that the circuit court erred in permitting the plaintiff, over his objection, to introduce any evidence under the petition, for the reason that it alleges that the sewer pipe was sold and delivered to Thomson and not to defendant, and that payment had been demanded of both Thomson and defendant, and both had refused payment.

We think the defendant has misconceived the allegations of the petition.  As we understand it, the allegation is, that the plaintiff, at the special instance and request of defendant, and on the promise that he would pay for the same, sold and delivered to Thomson the sewer pipe, etc., which was sufficient.  2 Chitty Plead. [16 Am. Ed.] pp. 27, 28, 138; 1 Chitty Cont. [11 Am. Ed.] p. 754.  The cause of action is alleged upon an original, and not a collateral promise, and therefore it is not within, but is without, the statute of frauds.

. In *Sinclair v. Bradley*, 52 Mo. 180, where plaintiff, at the defendant's request, furnished board and washing for the defendant's sister an instruction "that unless the defendant's contract for boarding and washing, furnished by plaintiff was in writing, the plaintiff could not recover," the supreme court say, was properly refused for the reason, the suit was founded on an original contract, made by plaintiff with defendant. The contract was not to answer for his sister's default,

but upon an original undertaking, and that the statute of frauds did not apply.

In *Glenn v. Lehnen,* 54 Mo. 45, it is said, that if a party agrees to be originally bound, the contract need not be in writing, but if the agreement is collateral to that of the principal contractor, the agreement must be in writing, and a like ruling was made in *Baker v. Scudder,* 56 Mo. 272.

In *Maurin v. Fogleberg,* 37 Minn. 23, elsewhere cited, where the defendant gave plaintiff the verbal direction, " You give all the goods to H. & R., that they want and charge directly to them and *every first of the month you bring in the bill and I will pay it.*" *Held,* this constituted an original, and not a collateral promise, and implied that the credit was to be given exclusively to defendant, although the goods were delivered to a third person.

In *Hartley Bros. v. Vamer et al.,* 88 Ill. 561, where defendant told plaintiffs who were merchants, that if they would sell one Renbottom goods, that he would see it paid. The defendant insisted he was not bound by his promise under the statute of frauds, because not in writing. It was held that the promise was an original and not a collateral promise, and not affected by the statute of frauds.

In *Owens v. Stephens,* 78 Ill. 463, where the owner of a building being erected said to a material man, that he would pay for all the material the contractor might get for the building, it was held that the owner was originally and primarily liable, on his promise to the material man, and the supreme court of California, on a similar state of facts made substantially the same ruling. *Lucas v. Zeile,* 53 Cal. 54.

The case of *Langdon v. Richardson,* 58 Iowa, 610, is cited by defendant, which seems to lend support to his position. It may be doubted whether this case was well considered, and even if so, it is out of line with the rule laid down in this state by our supreme court, and

hence can not be followed by us. The other three cases, cited by defendant in the same connection, are distinguishable from this, and require no further special notice here.

In the case of *Maurin v. Fogleberg*, 37 Minn. 23, decided at the May term, 1887, of the supreme court of Minnesota, where the facts were substantially the same as in *Langdon v. Richardson*, and where that case was cited as a controlling authority, the court refused to give it any countenance, as appears by the ruling which has already been stated.

It would of course be vain to attempt to classify, or to harmonize, the multitude of conflicting cases to be found in the reports as to when a primary promise is or is not within the interdict of the statute of frauds.

The true ground of principle, upon which we think the plaintiff's recovery in this case should be sustained, is that the defendant's promise to the plaintiff to pay for the sewer pipe arose out of a consideration of benefit moving to him.

It seems to us that this case, upon its facts, is comprehended within the third class of cases as arranged by Chancellor KENT in *Leonard v. Vandenberg*, 8 Johnson, 29. This class of cases is not within the statute of frauds. And this doctrine has been quoted with approval by the St. Louis court of appeals, in *Walther v. Maul*, 6 Mo. App. 370, where it is said *inter alia*, that it has been determined by unanimous decision upon the statute, that an oral promise to pay another's debt may, in some cases, be binding upon the promiser, though the debt still exists in full force against the original debtor, and in favor of the original creditor. In *Fullem v. Adams*, decided by the supreme court of Vermont, and to be found reported in 4 U. S. American Law Register, 460, in the notes thereto by Judge REDFIELD, it is said, "so also for any reason a new

party consents to assume a portion or the whole of a subsisting contract or undertaking, either on account of his own interest in having it carried forward, and the inability of the original contractor to do so, or for any sufficient consideration *his promise to pay money* will be treated as original, notwithstanding the original contract for some purpose may still be regarded as a subsisting one." This point is very fully discussed by SHAW, C. J. in *Wilson v. Boynton*, 3 Met. 396. The true test seems to be in cases of this character, whether the new party is acting as an original party so far as the new contract is concurred, or whether it is done merely in aid of the original contract.

The test here proposed is thus stated by the learned author: "It is only necessary to inquire to whom it was understood between the parties that the creditor should look for payment in the first instance."

"This, it seems to us, may be taken as the most decisive definition in regard to this whole class of cases * * * so that in executing contracts it becomes chiefly a matter of fact or of construction, whether the new promiser in fact assumed the attitude of principal or stood as a mere security for the performance of another."

The important distinction is between the claim of the plaintiff for work done, or material furnished after defendant's promise, and that which was before such promise. The former promise when severable, being valid, though original, the latter not, and the rule applies, though the person answered for was also charged. 1 Reed on the Statute of Frauds, sec. 93.

It follows that the promise and assurance of the defendant alleged in the petition was sufficient.

And in this connection it is not out of place to say, that in our opinion the facts of this case, as developed by the evidence, bring it within the principles enunciated by Chancellor KENT and Judge REDFIELD, in the

cases to which reference has just been made by us.   The evidence tends to show that Thomson, who was without means to carry on his sewer contract, interested the defendant, who was a man of means, in it with him, and who, for a consideration, bound himself to Thomson to furnish eighteen thousand dollars to carry out the contract.   The sewer tax bills, with which the contract price of the sewer was to be paid, could not be made available, or received, until the contract was executed. These were assigned to defendant as an indemnity.

He reserved, in his agreement with Thomson, the right, in case the latter should for any cause fail to fulfill the contract, to take possession of the material, implements, and work, and to complete the contract . himself.

He could get none of the money back which he bound himself to furnish to carry on the contract, until its completion.   He was then to receive ten per cent. on the face of the tax bills, and interest on the sums advanced on said work.   In view of the provisions of the agreement between Thomson and the defendant, and in the light of subsequent events, can it be said with any degree of plausibility, that the defendant had no interest in having the sewer contract carried forward? Thomson, it appears, failed to execute the contract, and the defendant stepped into his shoes, and completed it, and received the tax bills.   Thus on account of his own interest, he assumed, under his agreement with Thomson, the unexecuted portion of the sewer contract.

Under these circumstances, it seems clear to us that his promise to pay the plaintiff for sewer pipe, which was to be used in the construction of the sewer, was not within the statute of frauds.

It would seem that upon any just principle, the defendant, under the facts disclosed by the evidence contained in the record, ought to be estopped to dispute the plaintiff's claim.

This case comes very near, if not quite within the principle of *Yates et al. v. Ballentine*, 56 Mo. 530, and kindred cases, upon which the action of *assumpsit indebitatus* can be maintained.

This, however, is unimportant, since the case has been disposed of on other less disputable grounds.

The instructions given by the court were in conformity to the views herein expressed. The refusal of the other instructions asked by defendant was proper.

We have perused with much profit the very able and exhaustive brief with which we have been favored in the case by the defendant's counsel, but we have been unable to reach the conclusions therein stated.

Upon the careful consideration of the whole case, we have perceived no errors which call for interference by us with the judgment, which will be affirmed. ELLISON, J., concurs. GILL, J., not sitting.