RUBEY TRUST COMPANY, Respondent, v. ED. R. WEIDNER, Appellant.

Kansas City Court of Appeals, December 1, 1913.

1. **STATUTE OF FRAUDS: Original Undertaking not Within.** Where a bank, upon the presentation of the checks of an athletic club refused to pay same because the club had no funds, was told by defendant that if it would pay out the money called for by the checks and others that had been given but not yet presented, he would himself pay them, and the bank, in sole reliance upon such promise, paid out the money sued for on such checks, defendant will be liable to the bank, as upon an original undertaking even though defendant's promise was oral, since the Statute of Frauds does not apply in such case.

2. ————: ————: **What is Such an Undertaking.** The agreement must be an express agreement on the part of defendant himself to pay, and not a promise to pay the club's debt if it did not, and the money must have been paid out solely on the credit of such agreement and not on the strength of credit extended either in whole or in part to the club.

3. ————: ————: ————: **Jury Question.** If the agreement claimed by plaintiff was an original undertaking, and not a promise to pay the debt of another, and credit was not in fact extended to the club, then the mere fact that, for convenience of bookkeeping, the checks paid were kept on the books as an account of the club will not defeat plaintiff's claim. Such fact is a circumstance bearing on the question whether credit was given to the club or not, but it is not conclusive of that fact. And it is for the jury to say whether defendant assumed the attitude of principal or stood merely as a security for the club. Where there is any evidence to show an original undertaking on the part of defendant to pay, the jury's verdict finding that it was such an undertaking cannot be overturned.

4. ————: ————: ————: **Accepting Deed of Trust from Club Afterward.** Such original undertaking is not destroyed nor is credit extended to the club by the acceptance afterward of a deed of trust from the club, where it clearly appears that the bank did not seek, but was offered, the deed of trust by the club, and it was known that it was very doubtful whether the deed of trust was of any value and was accepted by the bank merely on the condition that, if anything was realized over and above other liens, it would be accepted by the bank to reduce the debt.

Appeal from Macon Circuit Court.—*Hon. B. R. Dysart,* Special Judge.

AFFIRMED.

*D. L. Dempsey* and *George N. Davis* for appellant.

*Guthrie & Franklin* for respondent.

TRIMBLE, J.—The respondent, a banking institution in the city of Macon, Missouri, sued the appellant to recover a sum of money paid out by the bank at the instance and request of appellant. The money so paid out, and for which suit is brought, was paid on checks drawn on the respondent bank and signed by appellant as treasurer of the Macon Athletic Club. The suit, however, is not on the checks, nor on a debt claimed to exist against the Macon Athletic Club by

reason of the payment of said checks. It is upon an alleged oral promise and agreement said to have been made by appellant to and with respondent that, if it would pay the money on said checks, appellant would repay respondent. Respondent, having thereafter paid the sum sued for, now sues the appellant for reimbursement according to the alleged promise.

The Macon Athletic Club was a corporation organized to maintain a baseball club and give baseball games at Macon. This was one of the towns in a baseball circuit established for the purpose of having games in each town in said circuit. The defendant was treasurer of said Macon Athletic Club, and was engaged in running a pool hall in Macon. As the baseball games usually drew large crowds to town, defendant was interested in seeing the club maintained and the games kept up because the business of the pool hall was thereby increased.

To defray the expenses of the club appellant, as treasurer thereof, drew checks on the respondent bank although the club had no funds in the bank to pay them. When these checks reached the bank, payment on them was refused and an officer of the bank went to appellant and told him that the respondent would not pay the checks because the club had no funds. The appellant, according to this officer's testimony, told said officer, that he had given still other checks which had not come in yet, and that he wanted all of the checks paid and he himself would pay respondent the money used in paying them. Relying upon said agreement and looking wholly to him for the money, respondent then paid out the money called for by said checks, to the amount sued for.

The questions whether defendant made the agreement, alleged, and whether plaintiff paid the money out in reliance entirely upon said agreement, if any, were submitted to the jury in appropriate instructions. The jury were also instructed that if the defendant only

promised that he would pay if the Macon Athletic Club did not, or, if the plaintiff relied upon the credit of the Macon Athletic Club and not solely on the alleged promise of defendant, then the finding must be for defendant.

The jury returned a verdict for plaintiff in the sum of $279.50 which was reduced by a remittitur entered by plaintiff to $244.60 for which sum judgment was rendered. Defendant appealed.

It is urged by defendant that the debt sued for was created by the checks of the Macon Athletic Club and when the bank paid out the money on them it thereby accepted said checks and they became written contracts, and evidence of any prior or contemporaneous agreement cannot be admitted to vary or contradict them. But the debt herein sued for was not created by, nor does it rest upon, the checks. It was created by the agreement of defendant to pay plaintiff the money paid out at defendant's request, and the only function the checks performed was to evidence the amount of such request. The suit was not on the checks nor was it upon a debt due from the Macon Athletic Club, but upon a debt created by defendant himself by virtue of his agreement to pay plaintiff the money it thereafter advanced. The question whether it was upon a debt due from the Macon Athletic Club, and also whether the agreement was merely to pay if the club did not, or whether it was that the defendant himself would pay, and that sole reliance was had thereon, were all submitted to the jury and it found that the debt created and sued upon was wholly that of the defendant. In such case the Statute of Frauds does not apply. [Chick v. Frey Coal Co., 78 Mo. App. 234.] There is a vast difference between telling a merchant, "Let this man have what goods he wants and I will pay you for them" and telling him, "If this man doesn't pay you for the goods he has bought I will." In the first statement, the one making it is

creating an original undertaking in which he makes
the debt entirely his if the merchant relies wholly
upon his promise, and the Statute of Frauds has noth-
ing to do with it. In the second statement, the one
making it is agreeing to answer for the debt of an-
other, and, by reason of the Statute of Frauds, he can-
not be bound thereby. In the former case the one so
telling the merchant is liable even though the goods
are, solely for convenience, charged to the man who
receives them where it appears the merchant did not
look to him for pay. [Newton Grain Co. v. Pierce,
106 Mo. App. 200, 29 Am. & Eng. Ency. of Law (2 Ed.),
920.] If the agreement alleged was an original un-
dertaking and was not a promise to pay the debt of
another, and credit was not in fact extended to the
club, then the fact that for convenience of bookkeep-
ing the checks paid were kept on the books as an ac-
count of the club will not defeat plaintiff's claim, nor
will the Statute of Frauds do so. [Hill Bros. v. Bank
of Seneca, 100 Mo. App. 230.] Such bookkeeping is a
circumstance bearing on the question whether credit
was given to the club or not, but it is not conclusive
of that fact. [29 Am. & Eng. Ency. of Law (2 Ed.),
925.] And it is for the jury to say whether the de-
fendant assumed the attitude of principal or stood
merely as a security for the club. [Kansas City, etc.,
Co. v. Smith, 36 Mo. App. 608; Chick v. Frey Coal
Co., 78 Mo. App. 234.]

It is earnestly contended that the evidence is not
sufficient to show an original undertaking on the part
of defendant to pay respondent, and that on the con-
trary the plaintiff's course of dealing showed it looked
to the Macon Athletic Club for its money. As the
finding of the jury upon these questions is in favor
of plaintiff, we cannot overturn that verdict if there
is any evidence at all in support of it. There was suf-
ficient evidence to show that defendant agreed to pay
the amount of the checks when they were refused by

the bank, and that upon defendant's agreement to pay, the checks were cashed.

It is true that after the bank paid out the money on the agreement made with the bank officer, Brown, another of the bank's officers, Harry M. Rubey, saw defendant and asked him about the overdraft, and this officer testified that defendant told him he would pay the overdraft personally if the club didn't pay it, and that he would guarantee it himself. But this was after the agreement to pay had been made with the cashier, Brown and defendant could not afterwards change or limit his contract theretofore made by saying then that he would pay only in case the club didn't pay. At that time credit had been refused the club and was extended to defendant only upon his promise to pay.

The course of dealing relied upon as showing conclusively that the bank did look to the club for payment is the fact that, more than a month after the money had been paid out by the bank, a deed of trust was executed by the club to the bank on its park and grandstand. But the evidence shows that this deed of trust was not sought by the bank nor was it accepted as in payment of the debt. The president of the club and the president of the bank both swore that the deed of trust was offered by the club to the bank, and that when this was done both the club and the bank knew that the lien of the deed of trust amounted to little or nothing owing to prior liens, and that the bank finally agreed to take it with the understanding that if anything was realized out of the sale of the club's meagre assets under said prior liens, and over and above said liens, the bank would receive and apply it on the debt. This was not an extension of credit to the club, nor did it conclusively show that when the bank paid out the money it was relying on the club, in part or in whole, for repayment instead of on the defendant. At most it was but a circumstance to be

considered by the jury in determining whether credit was extended to the club or not. If the deed of trust was taken upon the terms stated, then it was merely an act in defendant's favor done to assist him in reducing the debt as far as possible. This question of the terms on which the deed of trust was received was also submitted to the jury by proper instructions. Under all the circumstances this question and the questions of whether or not the defendant's agreement was an original undertaking and whether or not credit was extended solely to him were for the jury; and were submitted to the jury by instructions on both sides, and we are not warranted in disturbing its verdict.

The judgment is affirmed. All concur.